UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| | ) | |
| BRIANNA M., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 25-cv-504-JJM-AEM |
| FRANK BISIGNANO, | ) | |
| *Commissioner,* | ) | |
| *Social Security Administration,* | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Plaintiff Brianna M. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking to reverse the decision of Frank Bisignano, the Commissioner of the Social Security Administration ("the Commissioner"), in which he denied Brianna's claim for Title XVI Supplemental Security Income ("SSI") benefits. ECF No. 10. In response, the Commissioner moves this Court to enter an order, affirming his decision. ECF No. 11.

After a thorough review of the record, and for the reasons stated below, the Court GRANTS Brianna's Motion to Reverse and DENIES the Commissioner's Motion to Affirm.

## I.  BACKGROUND

In 2014, Brianna applied for SSI benefits, alleging disability due to muscle weakness,[1] anxiety, and depression.  ECF No. 10 at 2-3.  She was found to be disabled as of July 17, 2014.[2]  *Id.* at 3.  She was awarded SSI based on the opinion of State agency medical consultant[3] Erik Purins, M.D., who opined that Brianna's disability resulted in a residual functional capacity ("RFC")[4] of a reduced range of sedentary work,[5] which allowed for only occasional use of her hands for fingering and handling.[6]  *Id.* at 4; ECF No. 11 at 2.

---

[1] Brianna specifically alleged congenital neuropathy, which results in muscle weakness in the hands and feet.  ECF No. 11 at 2.

[2] This is referred to as the comparison point decision ("CPD") date, which is "[t]he most recent favorable decision that [the claimant is] disabled or continue[s] to be disabled."  20 C.F.R. § 416.994a(c).

[3] SSA regulations empower State agency medical consultants to make disability determinations.  *See* 20 C.F.R. § 416.913a(a); 20 C.F.R. § 416.1015(c).  A "State agency medical consultant" is "a member of a team that makes disability determinations in a State agency, or who is a member of a team that makes disability determinations for [the SSA]."  20 C.F.R. § 416.1016(a).  This individual must be a licensed physician.  20 C.F.R. § 416.1016(b).

[4] An "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  SSR 96–8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*  Additionally, an "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*."  *Id.* (emphasis in original); *see also* 20 C.F.R. § 416.945(a)(1).

[5] "Sedentary work" is defined as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 416.967(a).  Though these jobs generally "involve[ ] sitting, a certain amount of walking and standing is often necessary in carrying out job duties."  *Id.*

[6] These are terms of art.  "Fingering" means having the ability to pick, pinch, or otherwise work primarily with the fingers.  SSR 85–15, 1985 WL 56857, at *7 (S.S.A. Jan. 1, 1985).  "Handling" refers to the ability to seize, hold, grasp, turn, or otherwise work primarily with the whole hand or hands.  *Id.*

Seven years later, on June 15, 2021, Brianna was deemed no longer disabled. *Id.*; ECF No. 10 at 3. State agency medical consultant, Henry Laurelli, M.D., determined that Brianna had experienced medical improvement such that she could perform a range of light work. ECF No. 11 at 2. A second State agency medical consultant, Elaine Hom, M.D., affirmed Dr. Laurelli's assessment. *Id.* Dr. Hom cited Brianna's testimony that she could lift at least twenty pounds, as well as medical reports that she could lift her forty-pound child over her head, stand for two hours, and regularly jog, lift weights, and do sit-ups and push-ups. *Id.* As a result of this determination, the Commissioner terminated Brianna's SSI benefits. *Id.*; ECF No. 10 at 3.

A disability hearing officer[7] reconsidered this decision on Brianna's request and reaffirmed the Commissioner's conclusion that Brianna was no longer entitled to SSI. ECF No. 10 at 3. Brianna thereafter filed a written request for a hearing before an administrative law judge ("ALJ"). *Id.* In a decision dated October 4, 2022, ALJ Timothy Belford also determined that Brianna's disability had ended on June 15, 2021, and that she had not become disabled since then. *Id.*

Brianna appealed this decision to the Appeals Council, which sided with her and vacated ALJ Belford's order. *Id.* The Appeals Council remanded with specific instructions to: (1) further consider whether Brianna's medical condition had improved, and if so, whether she is currently disabled; (2) re-evaluate the medical

---

[7] A disability hearing officer is an experienced disability examiner tasked with reviewing a disability determination that the claimant appeals. *See* 20 C.F.R. § 416.1415; *see also* 20 C.F.R. § 416.1414.

opinions provided in Brianna's case; and (3) if warranted, obtain evidence from a vocational expert and resolve any conflicts between the expert's testimony and information provided in the *Dictionary of Occupational Titles* and its companion publication, the *Selected Characteristics of Occupations*.[8]  Tr. 175-76.

On remand, the case was assigned to a different ALJ, Kate Dana ("the ALJ"). ECF No. 10 at 3.  In a decision dated September 25, 2024, the ALJ concluded that Brianna was no longer disabled because her medical condition had improved.  *Id.* at 4; ECF No. 11 at 3.  In rendering this decision, the ALJ relied heavily on Dr. Laurelli and Dr. Hom's 2021 medical opinions.  ECF No. 10 at 8-9.  Furthermore, based on Brianna's age, work experience, education,[9] improved RFC, and the testimony of vocational expert Ed Calandra, the ALJ found that Brianna could perform a range of light work that would allow her to work in a significant number of jobs in the national economy.  ECF No. 10 at 5; ECF No. 11 at 3.

Brianna appealed this decision as well, but this time the Appeals Council denied her request for review.  ECF No. 10 at 3.  This suit followed shortly thereafter.

---

[8] The *Dictionary of Occupational Titles* and the *Selected Characteristics of Occupations* are resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations.  *Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015) (citing U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed. 1991); U.S. Dep't of Labor, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (1993)).  The SSA has a general policy of relying on these resources in helping make their determinations.  *See* SSR 00–4p, 2000 WL 1898704, at *1-4 (S.S.A. Dec. 4, 2000).

[9] As of June 15, 2021, Brianna was twenty-four years old with a high school education and no past relevant work.  ECF No. 10 at 5.

4

## II.    STANDARD OF REVIEW

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The Court "must uphold the Secretary's findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [their] conclusion."  *Rodriguez v. Sec'y of Health & Hum. Servs.*, 647 F.2d 218, 222-23 (1st Cir. 1981) (citing *Consol. Edison Co.*, 305 U.S. at 229).  If substantial evidence supports the Commissioner's decision, the Court should affirm it, "even if the record arguably could justify a different conclusion . . . ."  *Rodriguez Pagan v. Sec'y of Health & Hum. Servs.*, 819 F.2d 1, 3 (1st Cir. 1987) (citing *Lizotte v. Sec'y of Health & Hum. Servs.*, 654 F.2d 127, 128 (1st Cir. 1981)).  That said, the ALJ's findings are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."  *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

As a final note, "[t]he First Circuit has stated that courts should ensure 'a just outcome' in Social Security disability claims."  *Santa v. Astrue*, 924 F. Supp. 2d 386, 391-92 (D.R.I. 2013) (quoting *Pelletier v. Sec'y of Health, Educ. & Welfare*, 525 F.2d 158, 161 (1st Cir. 1975)).  "[T]he Social Security Act is to be construed liberally to

effectuate its general purpose of easing the insecurity of life." *Rodriguez v. Celebrezze*, 349 F.2d 494, 496 (1st Cir. 1965) (citing *Page v. Celebrezze*, 311 F.2d 757 (5th Cir. 1963)).

## III.   APPLICABLE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905.  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity that exists in the national economy.  42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. §§ 416.905-11.

### A.   The Five-Step Evaluation and Medical Improvement Standards

In evaluating an initial disability claim, the ALJ must follow a five-step process.  *See* 20 C.F.R. §§ 416.920(a)(4)(i)-(v).  The claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. *Sacilowski v. Saul*, 959 F.3d 431, 433, 440-41 (1st Cir. 2020).

Once a claimant has been found to be disabled, her eligibility for benefits must be periodically reviewed at a continuing disability review ("CDR") to determine whether her disability is ongoing.  20 C.F.R. § 416.990(d).  If the claimant has experienced medical improvement to the point where she is able to engage in substantial gainful activity, then she is no longer considered disabled, and her SSI benefits will be terminated.  42 U.S.C. § 1382c(a)(4); *see also* 20 C.F.R. §§ 416.920, 416.994.

"Medical improvement" is defined as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [she was] disabled or continue[s] to be disabled." 20 C.F.R. § 416.994(b)(1). ALJs evaluate medical improvement cases based on an eight-step process. *See* 20 C.F.R. §§ 416.994(b)(5)(i)-(viii).

### B.   The ALJ's Duty to Develop the Record

ALJs have a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (citing *Richardson v. Perales*, 402 U.S. 389, 400-401 (1971)); *see also Rackliff v. Berryhill*, No. 1:16-cv-00250-JHR, 2017 WL 2266796, at *4 (D. Me. May 22, 2017) ("The First Circuit has recognized that administrative law judges have a general duty to develop the record . . . ."). Indeed, where an ALJ fails to fully develop the factual record, the ALJ commits legal error, and remand is appropriate. *See, e.g.*, *Tegan S. v. Saul*, 546 F. Supp. 3d 162, 170 (D.R.I. 2021); *Ruggiero v. Bisignano*, No. 23-cv-12245-DLC, --- F. Supp. 3d ----, 2026 WL 893751, at *7 (D. Mass. Mar. 31, 2026).

In some cases, there may be insufficient evidence to determine whether a claimant has or continues to suffer from a disability. In these instances, federal regulations provide that the ALJ may recontact the claimant's medical source, request additional existing evidence, order that the claimant undergo a consultative examination, or ask the claimant or others for more information. *See* 20 C.F.R. § 416.920b(b)(2). The action taken by the ALJ will "depend on the nature of the . . . insufficiency." *Id.* If "despite efforts to obtain additional evidence, the evidence is

insufficient to determine whether [the claimant] is disabled, [the ALJ] will make a determination or decision based on the evidence [they] have."   20 C.F.R. § 416.920b(b)(3).

### C.   Opinion Evidence and Reliance on Experts

ALJs generally lack the qualifications necessary to interpret raw data in a medical record by themselves. *Manso-Pizarro v. Sec'y of Health & Hum. Servs.*, 76 F.3d 15, 17 (1st Cir. 1996) (citing *Perez v. Sec'y of Health & Hum. Servs.*, 958 F.2d 445, 446 (1st Cir. 1991); *Gordils v. Sec'y of Health & Hum. Servs.*, 921 F.2d 327, 329 (1st Cir. 1990)).  For this reason, when evaluating a disability claim, "an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person." *Santiago v. Sec'y of Health & Hum. Servs.*, 944 F.2d 1, 7 (1st Cir. 1991).  There are a few exceptions that permit the ALJ to render "common-sense judgments about functional capacity based on medical findings, as long as the [ALJ] does not overstep the bounds of a lay person's competence and render a medical judgment." *Gordils*, 921 F.2d at 329.  However, "[i]f the medical evidence is such that a 'reasonable mind might accept [it] as adequate to support a conclusion' of disability, the ALJ cannot rest on his untutored lay analysis to interpret it otherwise." *Katherine P. v. Kijakazi*, No. 21-427-JJM, 2022 WL 3224851, at *5 (D.R.I. Aug. 10, 2022), *report and recommendation adopted by text order* (D.R.I. Aug. 25, 2022) (quoting *Sherry B. v. Saul*, No. 20-140-JJM-PAS, 2021 WL 508517, at *2 (D.R.I. Feb. 11, 2021)).

In a similar vein, the opinions of medical experts do not constitute "substantial evidence and cannot be relied upon [by the ALJ] if the experts were not 'privy to parts of [plaintiff's] medical record [which] detracts from the weight that can be afforded their opinions.'" *Matthew R. v. Bisignano*, No. 24-231-MSM, 2025 WL 2319074, at *3 (D.R.I. Aug. 12, 2025), *report and recommendation adopted*, 2025 WL 2663227 (Sept. 17, 2025) (quoting *Ruben M. v. Saul*, No. 19-119-MSM, 2020 WL 39037, at *9 (D.R.I. Jan. 3, 2020), *report and recommendation adopted*, 2020 WL 555186 (D.R.I. Feb. 4, 2020)). "In particular, an ALJ cannot rely on a medical expert's opinion if the expert did not see documents indicating that the claimant's condition is materially different from what the expert found based on what he did see." *Matthew R.*, 2025 WL 2319074, at *3 (citing *Virgen C. v. Berryhill*, No. 16-480-WES, 2018 WL 4693954, at *2-3 (D.R.I. Sept. 30, 2018)).

In these cases, "substantial evidence of material symptom worsening that the non-examining experts did not see requires remand." *Matthew R.*, 2025 WL 2319074, at *3 (citing *Sandra C. v. Saul*, No. 18-375-JJM, 2019 WL 4127363, at *6 (D.R.I. Aug. 30, 2019), *report and recommendation adopted by text order* (D.R.I. Sept. 16, 2019)). "If the '[c]ourt does not know whether the non-examining state agency physicians would have rendered the same . . . opinions if they had all of the medical evidence,' remand is necessary." *Id.* (quoting *Mary K v. Berryhill*, 317 F. Supp. 3d 664, 668 (D.R.I. 2018)); *see also Kayla G. v. Kijakazi*, No. 21-443-PAS, 2022 WL 3368600, at *2 (D.R.I. Aug. 16, 2022).

On the other hand, there are some circumstances in which the ALJ may rely on non-examining expert findings, "despite post-file-review evidence, as long as the ALJ considered the post-file-review evidence and makes a commonsense finding that the pre- and post-file-review records are sufficiently similar such that the post-file review material does not . . . detract from the weight to be afforded to the expert findings." *Matthew R.*, 2025 WL 2319074, at *4 (citing *Jennifer F. v. Saul*, No. 19-547-MSM, 2020 WL 6488706, at *6-7 (D.R.I. Sept. 16, 2020), *report and recommendation adopted*, 2020 WL 6487813 (D.R.I. Nov. 4, 2020); *Michele S. v. Saul*, No. 19-65-WES, 2019 WL 6242655, at *8 (D.R.I. Nov. 22, 2019), *report and recommendation adopted by text order* (D.R.I. Dec. 13, 2019)). In other words, expert opinions "may not be rejected as stale unless the claimant sustains [her] burden of demonstrating that the post-file-review evidence reveals a 'sustained (and material) worsening' of the claimant's impairments that the ALJ ignored." *Matthew R.*, 2025 WL 2319074, at *3 (quoting *Jennifer F.*, 2020 WL 6488706, at *6).

## IV.    DISCUSSION

Here, Brianna argues that the ALJ in her case erred by failing to appropriately develop the record and by impermissibly interpreting raw medical data. ECF No. 10 at 2. As mentioned, Dr. Laurelli and Dr. Hom provided a pair of medical opinions in 2021 in which they concluded that Brianna was no longer disabled because she had experienced medical improvement. When the ALJ considered Brianna's SSI claim in 2024, Brianna submitted hundreds of pages of additional medical records that Dr.

10

Laurelli and Dr. Hom had not had the opportunity to consider when they rendered their opinions three years prior.  ECF No. 10 at 9; *see also* ECF No. 11 at 5.

Despite this, the ALJ stated at the hearing that Dr. Laurelli and Dr. Hum's 2021 opinions were entitled to "considerable evidentiary weight."  Tr. 29.  The ALJ acknowledged that, in the years following their opinions, Brianna had submitted additional medical records that neither of the State agency medical consultants had reviewed.  *Id.*  Nevertheless, the ALJ determined that this new evidence "[did] not warrant a change in the weight afforded to [Dr. Laurelli and Dr. Hum's] opinions."  *Id.*

The primary issue here, then, is whether Dr. Laurelli or Dr. Hum would have rendered the same medical opinions had they seen and considered Brianna's newly submitted medical records (the so-called "post-file-review record").  Indeed, if this new information demonstrated substantial evidence of material symptom worsening in Brianna's case, then Dr. Laurelli and Dr. Hum's 2021 opinions would effectively be rendered stale.  *See Matthew R.*, 2025 WL 2319074, at *3; *Jennifer F.*, 2020 WL 6488706, at *6-7; *Michele S.*, 2019 WL 6242655, at *8.

The post-file-review record that Brianna submitted contains 442 additional pages of material, which amounts to approximately 55.25% of the total administrative record.  ECF No. 10 at 9.  Included in the post-file-review record are documents pertaining to two EMG tests[10] that Brianna underwent in January and

---

[10] An EMG, or electromyography, test is "a diagnostic procedure to assess the health of muscles and the nerve cells that control them."  Mayo Clinic, *Electromyography (EMG)*, https://www.mayoclinic.org/tests-

September of 2022.  Tr. 951-52.  In her decision, the ALJ relied on these EMGs as a basis for concluding that Brianna had experienced medical improvement.  *See* Tr. 27. The ALJ summed up Brianna's EMG testing as follows: "Objective neurological testing performed in January 2022 revealed no electrodiagnostic evidence of large fiber polyneuropathy, though updated testing in September 2022 indicated only slightly reduced MUAP of the proximal muscle of the left upper extremity, not polyneuropathy, and left muscle biopsy showed no pathology." *Id.*

Upon review, the Court finds that it was error for the ALJ to have relied on this post-file-review information as a basis for concluding that Brianna was no longer disabled.  For one thing, making an RFC determination based on EMG testing does not strike the Court as the sort of "common-sense judgment about functional capacity" that an ALJ would be able to normally render on her own.  *Gordils*, 921 F.2d at 329; *see also Matthew R.*, 2025 WL 2319074, at *4.  This Court—and other courts within this circuit—have previously held that EMG findings are of the type of complex medical records that ALJs are usually not entitled to assess as laypersons. *See, e.g., June B. v. Bisignano*, No. 24-245-MRD, 2025 WL 1939087, at *8-9 (D.R.I. July 14, 2025); *Audrey P. v. Saul*, No. 20-92-MSM, 2021 WL 76751, at *9 (D.R.I. Jan. 8, 2021); *Mason v. Berryhill*, 245 F. Supp. 3d 327, 331-32 (D. Mass. 2017) (holding that the ALJ improperly discredited opinions of claimant's treating physicians and substituted his own interpretation of EMG tests).

---

procedures/emg/about/pac-20393913 [https://perma.cc/J8JD-DX2V] (last visited Apr. 20, 2026).

What is more, the ALJ erred by improperly cherry-picking certain evidence from the record. *See, e.g., June B.*, 2025 WL 1939087, at \*8; *Audrey P.*, 2021 WL 76751, at \*10. The ALJ notably omitted crucial pieces of information from her analysis that suggest that the results from Brianna's EMG tests are far from conclusive on the issue of medical improvement. As an example, Brianna's treating physician, Benjamin Weistrop, M.D., wrote of the January 2022 EMG:

> There is no electrodiagnostic evidence of a large fiber polyneuropathy seen on this study. On the needle EMG portion of the test, slightly reduced motor unit action potential amplitudes are seen in proximal muscles in the left upper extremity, however there are no other myopathic features observed. *These findings are subtle and should be interpreted with great caution, however an underlying myopathic process affecting the left upper extremity cannot be fully excluded.*

Tr. 952 (emphasis added). Another one of Brianna's physicians, Kara Stavros, M.D., said of the September 2022 EMG:

> [Brianna] recently underwent additional workup with EMG and muscle biopsy which was unrevealing. *I would like her to be evaluated at MGH for another opinion on the underlying neurologic cause of her symptoms. She is seeing genetics again next month to see if any additional testing options exist.*

*Id.* at 951 (emphasis added). Dr. Weistrop and Dr. Stavros' notes urge caution in interpreting Brianna's EMG testing and suggest that Brianna's medical condition required further evaluation. Put another way, the notes show far more nuanced and incomplete opinions regarding Brianna's condition than the ALJ made them out to be in her decision.

The cherry-picking did not end there. The ALJ also cited a September 2022 doctor's note for the proposition that Brianna had "denied any hand cramping, denied muscle pain or spasm, denied any numbness or tingling in the hands or feet." Tr. 27

13

(citing *id.* at 952).  The ALJ failed to recognize, however, that the same note listed Brianna's complaints of occasional hand stiffness, occasional tripping, and her inability to lift more than twenty pounds and walk more than ten minutes without taking a break due to right knee pain.  *Id.* at 952.

The ALJ also mentioned Brianna's May 2024 diagnosis with Ehlers Danlos Syndrome[11] in her decision.  *Id.* at 27.  The ALJ specifically referenced findings made by Brianna's rheumatologist, Lewena Maher, M.D., who opined that Brianna's "exam findings . . . revealed normal gait and full 5/5 strength in the upper and lower extremities with intact sensation."  *Id.* (citing *id.* at 1022).  According to the ALJ, these findings further demonstrated that Brianna was no longer disabled, as they showed that she "has the capacity to perform light work" and "reasonably support[ed] the conclusion that [Brianna] can frequently perform pushing, pulling, handling, and fingering with the upper extremities."  *Id.* at 28.

But it was also error for the ALJ to rely so heavily on this raw medical data to make such a determination.  As at least one other court within this circuit has pointed out, Ehlers Danlos Syndrome is "a relatively complex condition" that "the ALJ, without a supporting medical expert opinion" is generally ill-equipped to assess as a layperson.  *Linee P. v. Kijakazi*, No. 1:22-cv-00242-JAW, 2023 WL 2674398, at *3 (D.

---

[11] Ehlers Danlos Syndrome "is a group of hereditary disorders that affect connective tissues and are generally characterized by joint hypermobility (overly flexible joints) and stretchy, fragile skin." *Shisslak v. Saul*, No. 19-10768-PBS, 2020 WL 607156, at *1 n.2 (D. Mass. Feb. 7, 2020).

14

Me. Mar. 29, 2023). This Court agrees. This type of information is best left for a medical expert to interpret, not an ALJ.

The ALJ also cherry-picked findings from Dr. Maher's notes. As before, the ALJ omitted key parts of Dr. Maher's opinion that tend to cut against a finding of medical improvement in Brianna's case:

> Patient's physical exam findings, 4/5 Beighton score, she meets both major criteria of the Brighton score, along with multiple minor criteria qualifies this patient with a diagnosis of Ehlers Danlos syndromes. There are multiple subtypes of Ehlers Danlos. It will [be] important for us to connect with her geneticist to test for mutations in the COL5A1 or COL5A2 gene, or in COL1A1, however others may exist. Treatment for Ehlers Danlos is supportive, including joint protective habits such as repeatedly hyperextending joints and *daily activities that may put her at risk of such*, and physical therapy with a specialist in hypermobility. *She also may require cardiac and ophthalmologic screening given elevated risk of valvular disorders, aortic root dilation, and retinal detachment respectively.*

Tr. 1022 (emphasis added).

Based on the foregoing, the Court cannot say whether Dr. Laurelli or Dr. Hum would have rendered the same medical opinions had they seen Brianna's post-file-review evidence. *See Matthew R.*, 2025 WL 2319074, at *3; *Mary K v. Berryhill*, 317 F. Supp. 3d at 668; *Kayla G.*, 2022 WL 3368600, at *2. Though the ALJ considered this evidence when making her decision, it cannot fairly be said that she, as a layperson, made "a commonsense finding that the pre- and post-file-review records are sufficiently similar such that the post-file review material does not . . . detract from the weight to be afforded to the expert findings." *Matthew R.*, 2025 WL 2319074, at *4; *see also Jennifer F.*, 2020 WL 6488706, at *6-7; *Michele S.*, 2019 WL 6242655, at *8.

The Commissioner resists this conclusion, arguing that "the relevant medical evidence was expressed in relatable terms . . . that are not too raw for a lay ALJ to decipher without expert assistance." ECF No. 11 at 8-9. The Court disagrees. Too much of the post-file-review evidence—the EMG tests, the physicians' notes, the Ehlers Danlos diagnosis—consisted of complex medical information that, as other courts have recognized, a layperson is simply not equipped to analyze. *See, e.g., June B.*, 2025 WL 1939087, at *8-9; *Audrey P.*, 2021 WL 76751, at *9; *Mason v*, 245 F. Supp. 3d at 331-32; *Linee P.*, 2023 WL 2674398, at *3. Perhaps with the insight of a medical expert, this new information could very well constitute substantial evidence of material symptom worsening in Brianna's case. But no expert reviewed this new information—only the ALJ did, and that was erroneous. Additionally, the ALJ's error in interpreting raw medical data was exacerbated by her improper cherry-picking of Brianna's medical records to reach the conclusion that Brianna was no longer disabled. *See, e.g., June B.*, 2025 WL 1939087, at *8; *Audrey P.*, 2021 WL 76751, at *10. This too was error.

In sum, the Court finds that the ALJ's decision was not based on substantial evidence, as is required under 42 U.S.C. § 405(g), because the ALJ relied exclusively on the medical opinions of Dr. Laurelli and Dr. Hom, neither of whom had the full administrative record before them, including the extensive post-file-review record. As such, the Court remands this matter to the Commissioner. The Commissioner is instructed to seek a medical expert to assess whether Brianna's post-file-review evidence constitutes material symptom worsening.

## V.    CONCLUSION

For the reasons stated, the Court GRANTS Brianna's Motion to Reverse (ECF No. 10) and DENIES the Commissioner's Motion to Affirm (ECF No. 11).  The Court remands this case to the Commissioner for further action consistent with this Order.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

_____
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

April 22, 2026

17